1
2
3
4
5
6
7
8                           UNITED STATES DISTRICT COURT

9                         SOUTHERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,              Case No.:  07cr0330-LAB and
                                           15cv2841-LAB
12                            Plaintiff,

13  v.                                     **ORDER GRANTING REQUESTS**
                                           **FOR JUDICIAL NOTICE;**
14  BRENT ROGER WILKES,

15                            Defendant.    **ORDER DENYING IN PART**
                                           **MOTION UNDER 28 U.S.C. § 2255;**
16

17                                         **ORDER REQUIRING RESPONSE**
                                           **FROM DEFENSE COUNSEL MARK**
18                                         **GERAGOS; AND**

19
                                           **ORDER DENYING REQUEST FOR**
20                                         **DISCOVERY**

21

22          Beginning in the late 1990s, Brent Wilkes paid a series of bribes to former U.S.

23  Congressman Randy "Duke" Cunningham, in return for which Cunningham secured

24  millions of dollars in government contracts for Wilkes and his company.  Wilkes was

25  / / /

26  / / /

27  / / /

28  / / /

                                           1

convicted of bribery and other charges after a three-week jury trial. He testified during his trial and denied bribing Cunningham. The jury didn't believe him.[1]

Wilkes unsuccessfully appealed his conviction. He now brings a motion to vacate his conviction, under 28 U.S.C. § 2255, which the government concedes is timely. He supplemented the original motion with numerous other briefs, as well as other motions. In all, he raised fifteen claims.

**Trial and Appeal**

At trial, Wilkes was represented by attorney Mark Geragos. Geragos is an experienced and well known civil and criminal defense lawyer. Geragos put up a vigorous defense, and represented Wilkes competently in all respects. The Court previously made note of Geragos' outstanding performance in denying Wilkes' motion for a new trial. Additionally, the evidence against Wilkes was especially strong and presented a formidable challenge for even the best criminal defense lawyer.

On appeal, Wilkes asserted that his Fifth and Sixth Amendment rights had been violated by the Court's failure to compel immunity for a proposed defense witness, Michael Williams. He also argued that the evidence was insufficient to support a conviction. The Ninth Circuit denied Wilkes' appeal, noting that "this was not a close case" and that prosecutors had presented over two dozen witnesses as well as "extensive documentary evidence of Wilkes's guilt." *United States v. Wilkes*, 744 F.3d 1101, 1110 (9th Cir. 2014) [*Wilkes II*] (quoting *Wilkes I*, 662 F.3d at 601).

In connection with this motion, Wilkes has filed approximately fourteen pleadings of various kinds, amounting to hundreds of pages.[2] Despite filing a seemingly never ending stream of new documents and motions, Wilkes grew dissatisfied with the pace at which the motion was being adjudicated and sought a writ of mandamus from the Ninth Circuit, in

---

[1] A detailed account of Wilkes' crimes is set forth in the Ninth Circuit's opinion, *United States v. Wilkes*, 662 F.3d 524, 601 (9th Cir. 2011) (*Wilkes I*).

[2] The documents Wilkes filed that appear to be intended to advance his § 2255 claims in some way include docket numbers 488, 490, 492, 495, 500, 502, 513, 518, 520, 524, 526, 528, 533, and 534.

which he asked the court of appeals to direct this Court to immediately adjudicate his claims. After the petition was denied, Wilkes continued to augment his briefing with two more motions for judicial notice. (Docket nos. 533, 534.)

**Legal Standards**

A § 2255 motion is not a substitute for a direct appeal. *United States v. Frady*, 456 U.S. 152, 164–65 (1982). Issues that could have been presented on direct appeal, but were not, may not properly be brought in a § 2255 motion, unless the defendant shows cause and prejudice. *Id*., 164–67. And a § 2255 motion cannot be used as a second appeal. *United States v. Berry*, 624 F.3d 1031, 1038 (9th Cir. 2010). This means that issues raised and decided on direct appeal cannot be relitigated via a § 2255 motion; they are law of the case. *United States v. Hayes*, 231 F.3d 1132, 1139 (9th Cir.2000). This is especially true here, where the appeal was decided by a higher court whose decisions bind this Court. While a claim of ineffective assistance of trial counsel can be raised on direct appeal, a prisoner need not do so to preserve it. *Massaro v. United States*, 538 U.S. 500, 509 (2003).

Under 28 U.S.C. § 2255(b), if the records and files and the motion itself show that the prisoner is not entitled to relief, no hearing needs to be held.

A number of Wilkes' claims derive from claims he unsuccessfully raised on appeal. Wilkes tries to avoid the prohibition against relitigating claims decided on direct appeal by spinning the argument to suggest that his trial or appellate counsel were ineffective in failing to raise or argue the failed claims competently. Generally, claims of ineffective assistance of counsel are analyzed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on such a claim, a petitioner must show: (1) deficient performance—counsel's representation fell below the objective standard for reasonableness; and (2) prejudice — there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 687–88. The deficiency must be "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id*. at 687. Wilkes must prove both elements, which

/ / /

means his claims can be rejected if the Court determines either that counsel's performance was reasonable or that the claimed errors were not prejudicial. *See id*. at 697.

The Court accords a high degree of deference to counsel's advocacy choices and strategies, and evaluates it in light of what counsel knew at the time. The Supreme Court has repeatedly reminded courts not to evaluate counsel's effectiveness retrospectively, with the benefit of hindsight. *Id*. at 689. Additionally, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id*. The fact that a "wide range" exists means that a defendant cannot prevail merely by showing that his attorney's performance "deviated from best practices or most common custom[.]" *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Nor is it even enough to show that his counsel made "demonstrable errors". *United States v. Cronic*, 466 U.S. 648, 657 (1984). Rather, a petitioner must show that his attorney's representation amounted to incompetence under prevailing professional norms. *Strickland*, 466 U.S. at 690.

Another point relevant to some of Wilkes' claims — external constraints imposed on counsel, such as limitations arising from a court's scheduling, or denial of a continuance — do not give rise to an ineffective assistance of counsel claim merely because they make an attorney's task more difficult. *See Cronic*, 466 U.S. at 661–62 & n.31. In this respect counsel are only ineffective where "there has been an actual breakdown of the adversarial process" such that the reliability of the trial process is implicated. *Id*. at 657–58.

The recent case of *Davila v. Davis*, 137 S.Ct. 2058 (2017) clarified the standard for ineffective assistance of appellate counsel. Although that case involved a state habeas petition, Wilkes raises similar arguments here. "Effective appellate counsel *should not raise every nonfrivolous argument on appeal*, but rather only those arguments most likely to succeed." *Id*. at 2067 (citing *Smith v. Murray*, 477 U.S. 527, 536 (1986)) (emphasis added). "Declining to raise a claim on appeal . . . is not deficient performance unless that claim was *plainly stronger* than those actually presented to the appellate court. *Id*. (citing *Smith v. Robbins*, 528 U.S. 259, 288 (2000)) (emphasis added). *See also Smith* at 259

4

(emphasizing that it is "difficult to demonstrate that [appellate] counsel was incompetent" — particularly when counsel has filed a merits brief).

Claims that Wilkes could have raised on direct appeal but didn't are defaulted, unless he shows either cause and prejudice or actual innocence. *United States v. Ratigan*, 351 F.3d 957, 962 (9th Cir. 2003). *See also Bousley v. United States*, 523 U.S. 614, 623–24 (1998) (discussing "actual innocence" standard); *United States v. Frady*, 456 U.S. 152, 164–68 (1982) (discussing "cause and prejudice" standard). "Constitutionally ineffective assistance of counsel constitutes cause sufficient to excuse a procedural default." *Ratigan*, 35 F.3d at 964–65. But "[a]ttorney error short of ineffective assistance of counsel does not constitute cause for a procedural default even when that default occurs on appeal rather than at trial." *Murray v. Carrier*, 477 U.S. 478, 492 (1986).

Likewise, claims that Wilkes raised on direct appeal but lost cannot be reconsidered; they are barred by the law of the case doctrine. *Jeffries v. Wood*, 114 F.3d 1484, 1489 & n.1 (9th Cir. 1997) (en banc) (internal quotation omitted), *overruled by Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc) (limiting application of *Jeffries* to law of the case rather than law of the circuit). In other words, the Ninth Circuit's rejection of Wilkes' claims on appeal amounts to binding authority that this Court generally cannot reconsider or change. Only if "the relevant court of last resort" has issued "intervening controlling authority" or has "undercut the theory or reasoning" of the earlier circuit precedent in such a way that the decisions are clearly irreconcilable, is the Court required to follow the intervening higher authority. *Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012).

Some of Wilkes' claims are based on his own speculation that evidence might exist that could help him. He filed a discovery motion (Docket no. 488), which the Court denied without prejudice to its being refiled after the government filed its response. (Docket no. 505). Wilkes then filed a motion seeking an order requiring the government to collect and preserve all documents related to the case (Docket no. 526), which the Court denied. (Docket no. 529.) His briefing on this motion also includes some references to evidence he

5

does not have but thinks might exist. Rule 6 of the Rules Governing Section 2255 Proceedings authorizes discovery "for good cause." To show good cause, Wilkes must make specific (non-speculative, non-conclusory) allegations showing reason to believe that he may, if the facts are fully developed, be able to demonstrate that he is entitled to relief. *See Smith v. Mahoney*, 611 F.3d 978, 996 (9th Cir. 2010) (citing *Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997)). Mere speculation that helpful evidence might exist doesn't meet this standard. *Calderon v. U.S. Dist. Court for the N. Dist. of Cal.*, 98 F.3d 1102, 1106 (9th Cir. 1996) ("[C]ourts should not allow prisoners to use federal discovery for fishing expeditions to investigate mere speculation.")

**Wilkes' § 2255 Claims**

Wilkes has raised the following claims:

1. Mr. Geragos failed to prepare adequately for trial, failed to review available discovery, failed to discuss events with Wilkes to find out his version of the facts, and failed to conduct a proper pretrial investigation. He claims Geragos admits he did all those things, and without giving any specifics, he argues the outcome would have been different had Geragos done a competent job.

2. The government violated his rights by failing to reveal many pretrial statements by their "star witness" Mitchell Wade, in violation of *Jencks v. United States*, 335 U.S. 657 (1957); *Rovario v. United States*, 353 U.S. 53 (1957); *Gravel v. United States*; 408 U.S. 606 (1972); 18 U.S.C. § 3500; Fed. R. Crim. P. 16; and the Court's discovery order. Wilkes admits this could have been raised on direct appeal but argues his appellate counsel's failure to do so amounts to ineffective assistance.

3. Wilkes' third claim is omitted from his petition, but he raises it in later pleadings.[3] He argues that his appellate counsel was ineffective for raising weaker issues on direct

/ / /

---

[3] *See* Docket no. 495 at 19.

appeal and failing to raise stronger ones.  He argues all the claims he now raises, except his tenth claim, were stronger than the claims his counsel actually raised.

4. The government initially indicted him in a related case on fabricated charges in an effort to prevent him from having the time and money to defend himself.  Later, the superseding indictment omitted those original charges. He also says the government leaked the indictment and grand jury deliberations in an effort to taint the jury pool. As part of this claim, he repeats his contentions that the government failed to disclose exculpatory evidence.  He maintains these issues could have been raised on direct appeal but, in passing, argues his counsel's failure to do so amounts to ineffective assistance of appellate counsel.[4]

5. Government witnesses were coached. He bases this on a statement by former Congressman Cunningham (who did not testify), and another unnamed witness who did. He believes the government suborned perjury by doing this. Wilkes admits this could have been raised on direct appeal, and argues his counsel's failure to do so amounts to ineffective assistance of appellate counsel.[5] He also argues that "the record on the matter was not sufficiently developed."

6. The evidence was insufficient to convict him, and that his trial counsel was ineffective for failing to make a Fed. R. Crim. P. 29 motion.

7. Counsel was ineffective for failing to move to strike certain testimony of Mitchell Wade.  He argues that Wade made payments to Cunningham which he, Wilkes, knew nothing about.  He maintains that Wade never testified that he directed him to make those payments.  He argues that Wade's testimony was inadmissible, and that both his trial and

---

[4] The gravamen of Wilkes' fourth claim is that his due process rights were violated through the government's alleged cumulative misconduct. (*See* Docket no. 490 at 8.)  Ineffective assistance of counsel is only mentioned as an excuse for Wilkes' failure to raise this issue on direct appeal, (*see id.*), and is not developed as part of this claim.

[5] As with Wilkes' fourth claim, the gravamen of this claim is that his due process rights were violated. (*See* Docket no. 490 at 9.)  Although he mentions ineffective assistance of appellate counsel and an inadequate record, he does so only by way of offering an excuse for not raising the issue on appeal.  He doesn't adequately develop this claim.

7

appellate counsel were ineffective. Apparently he means that his trial counsel was ineffective in failing to object, and appellate counsel was ineffective for failing to raise the issue on appeal.

8. Wilkes raises a second ineffective assistance of counsel claim, arguing that Geragos failed to interview any of the defense witnesses that Wilkes identified, forcing Wilkes himself to testify. He argues Geragos failed to warn him of the dangers of testifying, and failed to prepare him effectively to testify. He claims that Geragos actively prevented other attorneys from preparing Wilkes.

9. The government failed to disclose inducements it offered Wade, and that Wade denied receiving anything of value in exchange for his testimony. He argues, though, that the government agreed not to seek forfeiture of Wade's home or the $20 million proceeds from his company, MZM. He believes the government made a secret deal with Wade. He faults his appellate counsel for not raising this issue on direct appeal, claiming she was ineffective. He also faults Geragos for failing to investigate and discover the supposed deal.

10. His trial counsel was ineffective for failing to object to the jury instructions, and that his appellate counsel was ineffective for failing to challenge the instructions on appeal. Specifically, he argues that the jury instructions failed to define what an "official act" was. This claim is closely related to his thirteenth and fifteenth claims, *infra*.

11. The government obtained evidence through illegal searches. He argues that the searches were illegal because warrants were obtained by deliberate misrepresentations, that their scope exceeded lawful limits, and that government agents violated Fed. R. Civ. P. 41 when executing the searches and accounting for the seized property. He faults his trial counsel for failing to seek to suppress the evidence, and maintains that the failure was because his counsel didn't obtain copies of the affidavits in support of the warrants.

12. His conviction was the product of a political conspiracy by the U.S. Attorney and other officials. He argues that his appellate counsel was ineffective for failing to raise this issue on direct appeal.

13. The Supreme Court's decision in *Skilling v. United States*, 561 U.S. 358 (2010) has rendered his conviction constitutionally infirm. He admits that this argument was raised on direct appeal, but argues his appellate counsel pursued the claim ineffectively.

14. Geragos was ineffective for failing to advise him about entering into a plea agreement. Wilkes says Geragos never discussed the strength of the government's case against him, never made him aware of any benefits of a plea agreement, and failed to advise him of plea offers the government made. For its part, the government represents that it never offered Wilkes a plea agreement.

15. He is actually innocent, in that his conduct does not constitute a crime.[6] He contends that any benefits he may have provided to Congressman Cunningham were solely for purposes of ingratiation and access, and do not amount to bribery. He cites the case of *McDonnell v. United States*, 136 S.Ct. 2355 (2016), which was decided after Wilkes' conviction became final. He argues his trial and appellate counsel were ineffective for failing to raise these claims at trial and on direct appeal.

Wilkes has reiterated and expanded on these basic claims in at least twenty-five supplemental arguments or assertions in his filed documents. To the extent he may have raised or attempted to raise other claims that are not part of one of the fifteen claims the Court has identified, the Court finds that he has failed to adequately raise and argue any additional claims, and they are waived. *See Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review.")

/ / /

/ / /

/ / /

---

[6] Wilkes raises this claim in a supplemental document, Docket no. 492.

**Judicial Notice**

Wilkes also filed two motions for judicial notice of other courts' decisions, both of which were unopposed (Docket nos. 534, 533.) Judicial notice appears to be proper under Fed. R. Evid. 201, and the motions are **GRANTED**.

**Preliminary Analysis**

The record makes clear that most of Wilkes' claims are meritless, are barred for failure to raise them on direct appeal, or were already considered and rejected by the Ninth Circuit.

### Second Claim

Wilkes argues that Wade spoke extensively with various government agents, and that he should have been provided with government agents' notes taken during discussions with Wade. The issue of Wade's testimony was raised on direct appeal, albeit on different grounds. *Wilkes I*, 662 F.3d at 536–37. Wilkes also unsuccessfully raised claims under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972), pertaining to information the government did *not* produce, and the Ninth Circuit ruled against him on those claims. *Wilkes I*, 662 F.3d at 535–37.

Wilkes maintains that the government should have produced all this material to him personally, and that production to his attorney was insufficient. (*See* Docket no. 495 at 17.) In his supplemental briefing, he renewed his request for discovery. (*Id*. at 18.) The Court denied the request in its order denying his separate motion for leave to take discovery (*see* Docket no. 505), and later held that he was not entitled to the material he requested here. (*See* Docket no. 529.)

Wilkes admits he does not know what might be in the materials he is requesting, but believes that non-disclosure requires automatic vacatur of his conviction even without a showing of prejudice. He's incorrect. Non-disclosure of potentially relevant materials is not an automatic *Brady* or *Giglio* violation and does not automatically mandate vacatur. *Wilkes I*, 662 at 535–36. Wilkes' speculation that government officials' notes might

/ / /

provide him with helpful evidence does not meet the good cause standard, and no discovery is warranted.  *See Calderon*, 98 F.3d at 1106.

To the extent this claim was raised on direct appeal, it is foreclosed.  To the extent Wilkes' novel arguments might be considered a new claim, the claim could have been raised on direct appeal and is therefore waived. His counsel was not ineffective for raising the *Brady*/*Giglio* claim the way it was raised, rather than in the weaker fashion Wilkes now proposes.

**Fourth Claim**

The first part of Wilkes' fourth claim — that the government initially indicted him on mail and wire charges involving a conspiracy with Kyle Foggo in order to drain away his resources and distract him, only to later drop the charges — could have been raised on direct appeal, if it had any merit. In fact, it has no merit.

The claim refers to an indictment in a different case 07cr329-LAB, *United States of America v. Foggo*.  That indictment was filed on February 13, 2007 and superseded on May 10, 2007. The Court dismissed the charges in that indictment in connection with its grant of Foggo's motion to sever the charges and transfer venue.  After the case was transferred, the government dropped its conspiracy theory against Foggo and reindicted him on related charges.  *See United States v. Foggo*, 2008 WL 2777009 at *4–*5 (E.D. Va., July 14, 2008).  The mere fact that the government did not pursue the original charge does not suggest anything improper.  *See id.* at *5 (discussing reasons for the change in charges).  After all, by the time the charges were dropped, Wilkes had been convicted of multiple felonies in this case and faced a long term of imprisonment.  Even assuming the government acted improperly, Wilkes was not prejudiced by it because he was represented throughout trial by retained counsel, and thereafter by appointed counsel, both of whom had adequate resources at their command.

The second part of this claim, concerning the leaked grand jury information, was raised on direct appeal and rejected by the Ninth Circuit. *Wilkes I*, 662 F.3d at 537.

/ / /

The third part of this claim — that the government "secreted"[7] exculpatory and impeaching evidence by submitting it in a disorganized fashion and not providing an index — could have been raised on direct appeal, if it had any merit. Even assuming the failure to organize and index discovery could amount to suppression of evidence, or that the government had a duty to organize the documents, Wilkes was not prejudiced by its failure to do so. He does not point to any evidence that was produced that his counsel was unable to use effectively because of the way it was produced. Wilkes did raise claims under *Brady* and *Giglio*, but they pertained to information the government did *not* produce, and the Ninth Circuit ruled against him on those arguments. *Wilkes I*, 662 F.3d at 535–37.

Wilkes' contention that acts by the government cumulatively amounted to a due process violation was raised on direct appeal, and the Ninth Circuit rejected that claim. *Wilkes I*, 662 F.3d at 542–43. To the extent he seeks to add other supposed misbehavior to the mix, those arguments should have been made on direct appeal and are therefore waived. Furthermore, the arguments lack merit, because only the asserted *Brady*/*Giglio* violations had any real potential to prejudice him.

Wilkes' counsel was not ineffective in failure to raise these issues on appeal. The major issues *were* raised on appeal and rejected by the court of appeals. And the sub-issues or arguments that Wilkes now argues should have been raised were weaker and would not have been more successful.

**Fifth Claim**

Wilkes' fifth claim, that certain witnesses were coached, was raised on direct appeal, and he lost. *Wilkes II*, 744 F.3d at 1109–10. As the Ninth Circuit pointed out, the evidence Wilkes points to was available at the time of trial, and did not establish any probability of an acquittal. *Id.*

---

[7] When Wilkes says the government "secreted" evidence, he appears to mean that it made the evidence inaccessible or hard to find and use, not that it failed to produce the evidence at all. (See Docket no. 490 at 39, ¶ 23.) Either way, this part of his claim is largely a rehash of his second claim.

The Cunningham declaration Wilkes mentions was offered in support of his new trial motion. (*See* Docket no. 398, Ex. A.) Wilkes' speculation that perhaps other witnesses were coached could have been raised at that time, or on direct appeal, if there was any evidence to support it. But there was not, and still is not. Wilkes' trial and appellate counsel were not ineffective in failing to pursue these speculative claims.

**Sixth Claim**

Wilkes' sixth claim, that his trial counsel was ineffective for failing to make a Rule 29 motion, is contradicted by the record. Defense counsel <u>did</u> make a Rule 29 motion and argued it at length. The Court denied it. (*See* Docket nos. 354 (transcript of trial, Oct. 17, 2007) at 1887:5–20; 355 (transcript of trial, Oct. 18, 2007) at 1974:4–1997:25 (argument and ruling).) Wilkes was present when that happened. A renewed Rule 29 motion was also denied. (*Id*. at 144 (text order of October 30, 2007 denying oral Rule 29 motion).)

Furthermore, Wilkes raised sufficiency of the evidence on appeal, (App. Br. (*Wilkes I*) at 45, 74, 76–78, 82–88), and the Ninth Circuit ruled against him. *Wilkes I*, 662 F.3d at 544, 547.

**Seventh Claim**

Wilkes raised the issue of Wade's testimony on direct appeal, albeit on a slightly different basis, and lost. *Wilkes I*, 662 F.3d at 536–37. The grounds he now urges are even weaker. The theory underlying Wilkes' new claim is, essentially, that the Court can (and in this case, was required to) make credibility determinations and strike testimony that, in its opinion, was not credible or that the jury shouldn't believe. Wade admitted on the stand that he conspired with Wilkes to bribe Cunningham:

Q. I see that one of the charges you pled guilty [to] was a conspiracy?

A. Yes.

Q. And the first conspiracy on there, did that involve Congressman Cunningham?

A. It did.

Q. Did that involve Brent Wilkes?

A. It did.

Q. Did you commit the crimes you pled guilty to?

A. I did.

(Docket no. 352 (Trial Transcript) at 1108:7–16; *see also id.* at 1112:5–1113:9 (testifying that Wilkes was already bribing Cunningham before Wade met him).) Wade also testified at length about the nature of the conspiracy, Wilkes' role in it, and the actions they took to further the conspiracy. (*Id.* at 1112:5–1214:15.) Wade's testimony did not, as Wilkes now claims, merely paint Wilkes as a bystander. It was instead powerful, relevant, and admissible testimony of Wilkes' guilt.

Wilkes' counsel was not ineffective for failing to move to strike Wade's testimony on the grounds that it was unbelievable. His appellate counsel was not ineffective for failing to make this baseless argument on appeal.

**Ninth Claim**

Wilkes argues the government violated his due process rights by failing to disclose an inducement it offered to Wade. Specifically, he says the government allowed him to keep his residence and $20 million that he received from the sale of his company, rather than seeking forfeiture.

The inducements offered to Wade were raised on direct appeal, and Wilkes lost on that point. The Ninth Circuit held there was "no reasonable likelihood" that evidence of Wade's negotiation with the government over the civil and criminal penalties he would face could have changed the verdict. *Wilkes I*, 662 F.3d at 536–37.

**Tenth Claim**

Wilkes argues, essentially, that Geragos should have objected to the jury instructions on the same grounds that were raised in *Skilling* and *McDonnell*. But at the time of trial, *Skilling* and *McDonnell* had not been decided. Failing to foresee how those two cases would later be decided was not unprofessional error. *See Engle v. Isaac*, 456 U.S. 107, 133–34 (1982). And even if it were, Wilkes raised the jury instruction issue on direct appeal and lost. *Wilkes I*, 662 F.3d at 543–44. The panel found any jury instruction error harmless beyond a reasonable doubt. *Id.* at 544.

14

**Eleventh Claim**

Wilkes refers vaguely to documents obtained through multiple supposedly illegal searches, without ever identifying what the documents were, or how he was prejudiced by their seizure or admission. The only reason he gives for the searches' illegality is his belief that the affiant(s) must have perjured themselves to obtain the warrants. In his supplemental brief, Wilkes admits he has never seen the warrants, supporting affidavits, or inventory lists, that he was told the warrants were sealed, and that he has no facts or evidence to support his claim. (Docket no. 495 at 48 ("[A]s to the claim that the warrants and searches were defective, Wilkes cannot pursue the factual basis for that aspect of the claim until he receives those documents.").) He admits he cannot establish an ineffective assistance of counsel claim without looking at the warrants, affidavits, and inventories. (*Id.* at 49.) In other words, his claims are based solely on his own speculation that someone might have perjured himself in some way to obtain one or more of the warrants and that as a result some unidentified evidence was obtained that prejudiced him in some way. This utter speculation falls far short of the "specific allegations" necessary to show good cause, and does not establish a justiciable habeas claim.

Affidavits supporting search warrants are presumed valid, and any challenges to their validity on the basis of falsehood must be made on the basis of allegations accompanied by an offer of proof. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). A conclusory attack on a warrant's validity, or the mere desire to cross-examine an affiant does not require any hearing. *Id.* Wilkes makes no offer of proof that any of the material he refers to is relevant to his claim, and will not be able to. His allegations are precisely the kind of "fishing expedition" that federal courts shouldn't permit. *See Calderon*, 98 F.3d at 1106.

The record establishes that Wilkes is not entitled to relief on this claim, nor has he shown that his counsel was ineffective for failing to pursue it.

/ / /

/ / /

**Twelfth Claim**

This claim consists of a repetition of earlier claims — alleged *Brady*/*Giglio* violations, grand jury leak claims, claims connected with the Foggo indictment — together with indignant and vehement generalized accusations of corruption, dishonesty, and injustice against the prosecutors. (*See* Docket no. 490 at 16; Docket no. 495 at 51.) As noted above, the *Brady*/*Giglio* and grand jury leak claims were raised on direct appeal and resolved against Wilkes. Claims pertaining to the Foggo indictment could have been raised on direct appeal if they had any merit. Generalized accusations of dishonesty and scheming against prosecutors don't raise a cognizable claim. But even assuming Wilkes had made out a cognizable claim for prosecutorial misconduct, it too could have been raised on direct appeal, and is therefore waived.

**Thirteenth Claim**

In this claim, Wilkes admits his appellate counsel raised and argued his claim under *Skilling*, and that it was rejected by the court of appeals. But he faults the appellate panel for affirming his conviction on the basis of what he calls a truncated harmless-error analysis. He argues his appellate counsel should have requested panel rehearing because, he thinks, the panel failed to conduct a thorough review of the whole record as required by *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986).

This argument fails for several reasons. First, *Van Arsdall* only requires consideration of the whole record, which the panel clearly considered here. *See Wilkes I*, 662 F.3d at 544 (discussing the evidence as a whole and finding any error harmless beyond any reasonable doubt). There is no requirement that a panel include a thorough and detailed discussion of the entire record in its written opinion. Second, Wilkes doesn't point to any evidence that the panel overlooked, and he doesn't suggest what would have been different had the panel discussed each piece of evidence in the record. In other words, even if his appellate counsel had requested rehearing, there is no basis for believing it would have been granted, or even if it had, that it would have led to a different result. Finally, the decision in *Wilkes I* is now law of the case, and is binding on this Court.

The argument Wilkes says should have been raised – that the panel did not review the whole record even though it said it did – was not likely to succeed, and his counsel was therefore right in not raising it. *See Davila*, 137 S.Ct. at 2067. Wilkes' counsel was actually the opposite of ineffective.

**Fifteenth Claim**

Wilkes makes a factual innocence claim on a theory based on *Skilling*. He also cites *McDonnell*, which he believes is helpful. He says he was factually innocent because he never offered a bribe in exchange for an "official act." This theory was also the subject of the two decisions the Court judicially noticed at Wilkes' request.

The Ninth Circuit considered and rejected Wilkes' "honest services" claim based on *Skilling*. *Wilkes I*, 662 F.3d at 543–44. In doing so, the panel pointed out that Wilkes' conviction for bribing Cunningham was based on a *quid pro quo* arrangement in which Wilkes gave Cunningham valuable gifts in exchange for Cunningham's official actions. *Id*. at 544. Wilkes bribed Cunningham with lavish meals and trips, prostitutes, a houseboat, mortgage payments, and other valuable gifts, in exchange for which Cunningham used his official position to award Wilkes lucrative government contracts. *See id*. at 530–31 (outlining the nature and purpose of Wilkes' bribes to Cunningham). Wilkes' argument based on *McDonnell* and its progeny does not undermine or call into question the Ninth Circuit's reasoning in any way, nor does it give rise to any new claim. *See Wilkes II*, 744 F.3d at 1109–10.

**Ineffective Assistance of Appellate Counsel**

Wilkes' third claim is premised on his appellate counsel's supposedly unprofessional errors in raising less meritorious claims and ignoring more meritorious ones. None of the claims Wilkes now points to were more meritorious than the ones his appellate counsel actually raised on direct appeal and, in any event, there was no likelihood that he would have prevailed on any of them. The only possible exception, which is discussed below, are the claims of ineffective assistance of trial counsel. Wilkes has not suggested that his appellate counsel could have raised this claim on direct appeal.

Wilkes' third claim lacks merit. To the extent his other claims raise ineffective assistance of appellate counsel as a basis for relief, they lack merit as well.

**Denial in Part of Motion for Relief**

As to the claims he could have raised on direct appeal but did not, Wilkes has established neither cause and prejudice, nor actual innocence, and those claims are defaulted. *See Ratigan*, 351 F.3d at 962. Wilkes' second, third, fourth, fifth, sixth, seventh, ninth, tenth, eleventh, twelfth, thirteenth, and fifteenth claims are subject to immediate denial, without an evidentiary hearing. As to these claims, Wilkes' motion for relief is **DENIED**.

**Ineffective Assistance of Counsel Claims**

In his sworn declaration, as well as in unverified allegations, Wilkes makes sweeping accusations of incompetence, refusal to investigate, and extensive and wilful neglect of the case against Geragos. The following representative charges are taken from that declaration.

"On numerous occasions, Mr. Geragos told me that he was unable to effectively represent me, in fact told me he was admittedly not effective, because of a number of deficiencies, some of which were his own error . . . ." (Wilkes Decl., ¶ 2.) Wilkes represents that Geragos admitted that he had neglected to review discovery, and that if he had properly done his job, Wilkes probably would have been acquitted. (*Id*., ¶ 3.) Wilkes claims that neither Geragos nor anyone else on his staff spent enough time with him to find out important details of the case relevant to his defense. (*Id*., ¶ 5.) Instead, he says, Geragos was too busy with other cases, with television appearances, and with other public events to take time to do this. (*Id*.) "Mr. Geragos also admitted to me, post-trial, that he had failed to perform a sufficient investigation of the case, and was ineffective because he did not have enough time to prepare for the case, particularly given his heavy caseload." (*Id*.) Wilkes also says Geragos admitted that he spent "only a fraction of the time on trial preparation that he should have," did no investigation at all, "did not interview a single witness" (even though helpful witnesses were pointed out to him), did not bother to review

18

discovery materials, and had no interest in learning about helpful evidence Wilkes tried to point out to him. (*Id.*, ¶¶ 11, 16, 25, 28, 32–39, 43–49.)

Wilkes also maintains that Geragos failed to prepare witnesses for trial, which resulted in his failure to call any (other than Wilkes himself). (Wilkes Decl., ¶¶ 6, 8.) He claims that Geragos not only failed to prepare him to testify, but prevented other defense attorneys from preparing him. (*Id.*, ¶ 8.) He also claims Geragos did not warn him about the risks of testifying.[8] (*See* Claim 8.)

Wilkes also charges Geragos with refusing to respond to his communications and refusing to provide his file or materials from the file, and other materials Wilkes requested. (Wilkes Decl., ¶ 11.)

Finally, Wilkes argues Geragos failed to discuss plea offers with him. (*See* Claim 15.) But as pointed out earlier, the government represents that it made no plea offers so Geragos cannot be faulted for failing to discuss something that didn't exist. *See Nunes v. Muller*, 350 F.3d 1045, 1052 (9th Cir. 2003) (explaining that a defendant has a right to assistance of counsel in connection with plea bargains that have been offered). *See also Weatherford v. Bursey*, 429 U.S. 545, 561 (1977) (holding a defendant has no right to a plea bargain).

Broadly speaking, most of Wilkes' complaints about Geragos are baseless. For example, he contends that Geragos failed to have a defense strategy (Wilkes Decl., ¶ 8), which from this Court's viewpoint is clearly untrue. Some of Wilkes' claims clearly implicate matters of trial strategy, which Geragos was entitled to make using his professional experience. Wilkes hasn't shown that Geragos' judgment about those decisions was deficient, much less that it fell below the *Strickland* standard. (*See, e.g.*,

---

[8] The Court found Wilkes had offered false testimony concerning his involvement with two prostitutes whose services were part of a bribe to Cunningham. (Sentencing Tr. At 68:8–70:11 (finding that Wilkes had lied under oath, and adding a two-point adjustment for obstruction of justice).) Even assuming Geragos failed to warn Wilkes not to lie under oath, this doesn't amount to ineffective assistance of counsel or anything like it. All witnesses in all cases — most of whom are not represented by counsel at all — are on notice that they must tell the truth; the oath itself is sufficient to convey that.

Wilkes Decl. (Docket no. 490 beginning at 30), at ¶¶ 40–41, 50–51 (complaining that Geragos did not follow Wilkes' direction about what evidence to put on and how to cross-examine witnesses).) The Court found Geragos to be a skilled advocate, and to have vigorously defended Wilkes at trial, an observation mentioned at length during the new trial motion and at sentencing. (*See, e.g.,* Sentencing Transcr., 15:3–16:5.) Furthermore, the Ninth Circuit found Wilkes was not prejudiced by Geragos' level of preparation or failure to introduce evidence. *Wilkes I*, 662 F.3d at 543. Geragos cannot realistically be faulted for not putting on a good defense.

Additionally, much of what Wilkes says is purely conclusory — and, what is more, "facts" he attests to elsewhere show his conclusions are ill-founded. For example, he admits Geragos spoke with him on many occasions about the case and about his representation, but complains Geragos or his staff should have spent more time with him "to learn all the details of the events leading up to the charges in this case . . . ." (Wilkes Decl., ¶ 5.) Without support in the record or otherwise, he also maintains that Geragos "spent only a fraction of the time on trial preparation that he should have . . . ." (*Id.*, ¶11.) Wilkes' opinions about what Geragos should have done do not establish ineffective assistance, particularly because other parts of his affidavit make clear that his opinions and conclusions are contradictory or unreasonable. Wilkes may have complaints about the level of service he received from his retained counsel, but his dissatisfaction is not a basis for relief. *See Cronic*, 466 U.S. at 658 n.21 ("[W]e attach no weight to either respondent's expression of satisfaction with counsel's performance at the time of his trial, or to his later expression of dissatisfaction.")

Similarly, it is clear much of what Wilkes points to is based merely on his own disagreement with Geragos' sound trial tactics and accurate assessment of the case. For instance, Wilkes believes Geragos should have called him to testify in *extreme* detail about ten years of his business' history:

> A proper defense required that I methodically provide a tour through ten years of ADCS, Inc. business history and practices to give insight into the ethical

and legal way that we pursued business. . . . As I explained to Geragos, proving my innocence required telling what really happened during those ten years and explaining in detail the complex process of educating potential technology users, procurement decision makers, congressional leaders and staff; obtaining earmarked appropriations; complying with Federal Acquisition Rules to win and perform on government contracts and to do all of this in a highly political, highly competitive and frequently investigated field of endeavor. This business involved hundreds of individuals including lobbyists, government contractors, members of the [H]ouse and [S]enate, Congressional staffers, Government project managers, Government technical staff, competitors, press, vendors and suppliers of technology, bankers[,] and employees of various companies. It also involved the review of ten years of historical records detailing dozens of projects and thousands of transactions and hundreds of thousands of records of plans, correspondence, etc. . . [.]

(Wilkes Decl., ¶22.) But Wilkes did testify extensively about his background in government contract work, and it was up to Geragos to decide how best to present this evidence.

Wilkes also blames Geragos for things that were clearly beyond his control, such as the government's actions, or the Court's rulings. (*See, e.g.,* Wilkes Decl., ¶¶ 3, 7 (blaming Geragos for the government's failure to disclose), ¶16 (blaming Geragos for prosecutorial misconduct, the Court's severance of a related case, and other actions by the government or the Court), ¶ 22 (blaming Geragos for the Court's denial of a continuance).)[9] Geragos' own remarks about being "ineffective" refer to these external factors — *e.g.,* he said he could not effectively defend Wilkes because of time constraints the Court placed on him, or because of the government's failure to provide him all the discovery he sought. The Court regards most if not all of these statements as tactical arguments or mere posturing. That is, Geragos represented to the Court that he could not effectively provide a defense

---

[9] Whether Wilkes was unfairly prejudiced by any of the Court's rulings or by the prosecution's alleged misconduct could have been raised on direct appeal, and most of these issues were raised. A defendant cannot appeal the same issues a second time by recasting them as ineffective assistance claims. Ineffective assistance is limited to attorneys' unprofessional errors, not matters beyond the attorney's control.

unless the Court ruled in his favor on repetitive requests to continue Wilkes' trial. But the denial of Geragos' motions did not unfairly prejudice Wilkes, as this Court and the Ninth Circuit found. In any event, Geragos' remarks were not admissions of unprofessional errors.

Wilkes also offers the declaration of Shereen Charlick, who was appointed to represent Wilkes in the related criminal case, 07cr329, and provisionally appointed as defense counsel in this case, and who later served as appellate counsel. (Docket no. 502 at 14–19.) Charlick corroborates Wilkes' version of events to some extent, but she stops short of claiming that Geragos committed any unprofessional errors. She defers to Wilkes regarding the helpfulness of the evidence he thinks Geragos should have found and presented; she makes no assessment of that and disclaims any ability to do so. (Charlick Decl., ¶¶ 6, 8, 11, 13.) Nor does she attest to any facts showing that Wilkes was ultimately denied effective assistance of counsel. Rather, she says Geragos was behind schedule with his defense preparation, and believes that is why she was appointed. (*Id.*, ¶ 4.) She also says that she did some of Geragos' work for him, including finding, subpoenaing, and arguing for the admissibility of the testimony of certain defense witnesses. (*Id.*, ¶¶ 4–5, 7.) She does not suggest that her own efforts were inadequate.

The Court has the benefit of having observed the entire trial. In the Court's view, Geragos put on a vigorous and effective defense. In spite of a mountain of evidence condemning Wilkes, Geragos kept the jury out for four days. Nothing that occurred during the proceedings or in the record suggests to the Court that he was ineffective within the meaning of *Strickland*.

Nevertheless, a hearing is required unless the record *conclusively* shows no relief is warranted. In this case, that would mean Geragos neglected some obligation central to the attorney-client relationship (such as communicating plea offers), or ignored evidence that any competent attorney would have recognized would have significantly helped Wilkes. As to these charges, the Court finds that a limited response from Geragos is necessary.

/ / /

The Court finds that the attorney-client privilege has been **WAIVED** and that Attorney Mark Geragos is **RELIEVED** of any obligation of confidentiality, *see Bittaker v. Woodford*, 331 F.3d 715, 716 (9th Cir. 2003), and **ORDERS** Geragos to lodge an affidavit or declaration under penalty of perjury, responding to Wilkes' First, Eighth, and Fourteenth claims. His response should, at a minimum, answer these questions:

1. Did you admit to Wilkes that you didn't conduct an adequate investigation before trial?

2. Did you admit to Wilkes that because of your own unprofessional errors you were unprepared for trial, and that if you had been prepared he likely would have been acquitted?

3. Did you fail to communicate any plea offers that the government made to Wilkes?

4. Did you prepare Wilkes to testify? If you did not, why not?

5. Concerning the witnesses and evidence Wilkes now says he pointed out to you, did you recognize the information as potentially helpful to Wilkes' defense? To what extent did you investigate the information or interview the witnesses? Why didn't you present these witnesses' testimony or this evidence as part of your case?

6. Have you refused to provide Wilkes with his file, or with documents from his file? If so, why?

In preparing his own affidavit, Geragos should review Wilkes' and Charlick's declarations (Docket nos. 490 at 30–55 and 502 at 14–19.) But he need not address Wilkes' contentions point by point, and his affidavit need not be lengthy. If appropriate, after receiving Geragos' response the Court may hold a hearing on these issues.

Geragos must lodge his response by sending a paper copy to chambers, no later than **December 22, 2017**. He must also mail a copy of his response to Wilkes' address as reflected in the docket. If Geragos requires more time, he may request it by *ex parte* motion, without obtaining a hearing date first. The Clerk is directed to email a copy of this order

/ / /

23

to Geragos at the email address provided in the docket, and also to send a copy to him by some method that will provide proof of receipt.

The Court does not believe any protective order or other precautions are necessary. However, if Geragos or the parties believe that Geragos' affidavit should be the subject of a protective order, they must file letter briefs stating their position by **December 15, 2017**. *See Lambright v. Ryan*, 698 F.3d 808, 818–19 (9th Cir. 2012) (discussing the fairness principle and the role of protective orders). Otherwise, Geragos' affidavit will be publicly filed in the docket.

**Discovery Request**

The Court denied Wilkes' discovery request without prejudice, subject to reconsideration and renewal after the government filed its response. The government has filed its response, but Wilkes did not renew his discovery request.

For reasons set forth in the Court's order denying Wilkes' motion to preserve evidence (Docket no. 529), and for reasons set forth above, the Court finds Wilkes has not met the "good cause" standard, and his discovery request is **DENIED**.

**IT IS SO ORDERED**.

Dated:  December 12, 2017

Hon. Larry Alan Burns
United States District Judge